IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

NANCY SMALLWOOD, et al.,

    Plaintiffs,

v.                                  CIVIL ACTION NO. 2:12-cv-01662

ETHICON, INC., et al.,

    Defendants.

MEMORANDUM OPINION AND ORDER
(*Daubert* Motion re: Salil Khandwala, M.D.)

Pending before the court is the Motion to Exclude Case-Specific Opinion Testimony of Salil Khandwala, M.D. [ECF No. 71] filed by plaintiffs Nancy Smallwood and Leon Smallwood, Sr. (collectively, the "plaintiffs"). The Motion is now ripe for consideration because briefing is complete.

I.    **Background**

This case resides in one of seven MDLs assigned to the Honorable Joseph R. Goodwin by the Judicial Panel on Multidistrict Litigation concerning the use of transvaginal surgical mesh to treat pelvic organ prolapse ("POP") and stress urinary incontinence ("SUI"). This individual case is one of a group of cases that the Clerk of the Court reassigned to me on November 22, 2016. [ECF No. 101]. In the seven MDLs, there are approximately 28,000 cases currently pending, approximately 17,000 of which are in the Ethicon MDL, MDL 2327.

Prior to the reassignment, in an effort to efficiently and effectively manage the massive Ethicon MDL, Judge Goodwin decided to conduct pretrial discovery and motions practice on an individualized basis so that once a case is trial-ready (that is, after the court has ruled on all summary judgment motions, among other things), it can then be promptly transferred or remanded to the appropriate district for trial. To this end, Judge Goodwin ordered the plaintiffs and defendants to submit a joint list of 200 of the oldest cases in the Ethicon MDL that name only Ethicon, Inc., Ethicon, LLC, and/or Johnson & Johnson. These cases became part of a "wave" of cases to be prepared for trial and, if necessary, remanded. *See* Pretrial Order No. 206, *In re Ethicon, Inc. Pelvic Repair Sys. Prods. Liab. Litig.*, No. 2:12-md-02327, Nov. 20, 2015, http://www.wvsd.uscourts.gov/MDL/ethicon/orders.html. The plaintiffs' case was selected as an "Ethicon Wave 2 case."

## II. Legal Standard

By now, the parties should be intimately familiar with Rule 702 of the Federal Rules of Evidence and *Daubert*, so the court will not linger for long on these standards.

Expert testimony is admissible if the expert is qualified and if his or her expert testimony is reliable and relevant. Fed. R. Evid. 702; *see also Daubert*, 509 U.S. at 597. An expert may be qualified to offer expert testimony based on his or her "knowledge, skill, experience, training, or education." Fed. R. Evid. 702. Reliability may turn on the consideration of several factors:

> (1) whether a theory or technique can be or has been tested;
> (2) whether it has been subjected to peer review and

> publication; (3) whether a technique has a high known or potential rate of error and whether there are standards controlling its operation; and (4) whether the theory or technique enjoys general acceptance within a relevant scientific community.

*Cooper v. Smith & Nephew, Inc.*, 259 F.3d 194, 199 (4th Cir. 2001) (citing *Daubert*, 509 U.S. at 592–94). But these factors are neither necessary to nor determinative of reliability in all cases; the inquiry is flexible and puts "principles and methodology" above conclusions and outcomes. *Daubert*, 509 U.S. at 595; *see also Kumho Tire Co. v. Carmichael*, 525 U.S. 137, 141, 150 (1999). Finally, and simply, relevance turns on whether the expert testimony relates to any issues in the case. *See, e.g.*, *Daubert*, 509 U.S. at 591–92 (discussing relevance and helpfulness).

In the context of specific causation expert opinions, the Fourth Circuit has held that "a reliable differential diagnosis provides a valid foundation for an expert opinion." *Westberry v. Gislaved Gummi AB*, 178 F.3d 257, 263 (4th Cir. 1999).

> A reliable differential diagnosis typically, though not invariably, is performed after 'physical examinations, the taking of medical histories, and the review of clinical tests, including laboratory tests,' and generally is accomplished by determining the possible causes for the patient's symptoms and then eliminating each of these potential causes until reaching one that cannot be ruled out or determining which of those that cannot be excluded is the most likely.

*Id.* at 262 (citations omitted). "A differential diagnosis that fails to take serious account of other potential causes may be so lacking that it cannot provide a reliable basis for an opinion on causation." *Id.* at 265. However, an expert's causation opinions will not be excluded "because he or she has failed to rule out every possible alternative

cause of a plaintiff's illness." *Id.* "The alternative causes suggested by a defendant 'affect the weight that the jury should give the expert's testimony and not the admissibility of that testimony,' unless the expert can offer '*no* explanation for why she has concluded [an alternative cause offered by the opposing party] was not the sole cause.'" *Id.* at 265 (citations omitted).

At bottom, the court has broad discretion to determine whether expert testimony should be admitted or excluded. *Cooper,* 259 F.3d at 200.

### III. Discussion

The plaintiffs first argue that I should preclude Dr. Khandwala from giving certain testimony relating to causation. As grounds for this request, the plaintiffs argue, without further elaboration, that certain Dr. Khandwala testimony lacks foundation because he "failed to identify with a reasonable degree of medical certainty a particular cause of Ms. Smallwood's pelvic pain syndrome and recurrence of incontinence." Mot. at 2.

I disagree. First, the plaintiffs do not challenge Dr. Khandwala's qualifications or methods in testifying on the subject. Second, Dr. Khandwala performed an independent medical examination of Ms. Smallwood and reviewed her medical records. In reaching his opinion on the issue of causation, Dr. Khandwala's expert report and deposition testimony show that he considered numerous alternative causes for the plaintiff's injuries and explained his reasons for ruling out those alternative causes. To the extent that the plaintiffs' believe that Dr. Khandwala's

4

testimony is not credible, the plaintiffs are free to address those issues on cross-examination. The plaintiffs' Motion on this point is **DENIED**.

The plaintiffs also seek to preclude Dr. Khandwala from offering testimony that criticizes Ms. Smallwood's healthcare providers. Specifically, the plaintiffs argue Dr. Khandwala should not be permitted to offer testimony on the subject of whether Dr. Velupillai Wingakumar, Dr. Stephan Woolums, or any other of Ms. Smallwood's healthcare providers breached the appropriate standard of care. In response, the defendants concede that Dr. Khandwala does not intend to opine on this subject, and that they agree with this decision. The plaintiffs' Motion on this point is **GRANTED.**

The court **ORDERS** that the Motion to Exclude Case-Specific Opinion Testimony of Salil Khandwala, M.D. [ECF No. 71] is **GRANTED in part**, and **DENIED in part**.

The court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

    ENTER:    December 12, 2017

    _____
    ROBERT C. CHAMBERS
    UNITED STATES DISTRICT JUDGE